RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 05 2015

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
(2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309)

| | |
|---|---|
| Ronald Satish Emrit, | ) |
|     Plaintiff (Pro Se) | ) |
| | ) C.A. No. **1:15-CV-3536** |
|     v. | ) |
| | ) |
| SunTrust Banks, Inc., | ) |
|     Western Union, | ) |
|     Moneygram In- | ) |
|     ternational, Inc., & | ) |
|     Ronald Cephas | ) |
|     Emrit, | ) |
|     Defendants | ) |
| | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing forth this cause of action against all four of the defendants looking to assess joint and several liability.  Presumably, the defendants would seek contribution and indemnity from each other through the filing of cross-claims.  Accordingly, the plaintiff is suing all seven of the defendants for a remedy at law amounting to $450,000,000 (four hundred and fifty million dollars).  In bringing forth this cause of action, the plaintiff states, avers, and alleges the following:

1.) The plaintiff is suing the four defendants for having committed the following tortious acts: negligence, conversion, intentional infliction of emotional distress (IIED), civil fraud/material misrepresentation, tortious interference

1

with business relations/contracts, and products liability (e.g. a design defect or manufacturing defect).

2.) The plaintiff is also suing the defendants for having committed a material breach of contract.

3.) The Glass-Steagall Act of 1933 created the Federal Deposit Insurance Corporation (FDIC) as a part of the "New Deal" legislation proposed by former president Franklin Delano Roosevelt.

4.) Apparently, Karen Emrit and Ronald Cephas Emrit have three checking accounts and a money market account with SunTrust Bank. Accordingly, all of the Emrits' checking accounts and their money market account are presumed to be insured by the FDIC since SunTrust Bank is an FDIC-insured bank.

5.) The Glass-Steagall Act of 1933 also created a separation between investment banks and commercial banks although this legislation was more recently overturned by the Gramm-Leach-Bliley Act such that commercial banks and investment banks no longer have to be mutually exclusive.

6.) Nevertheless, the Emrits' money market account or checking accounts are considered to be "securities" pursuant to the stare decisis/persuasive precedent of ***SEC v. W.J. Howey, Co., 328 U.S. 293 (1946)*** in which an "investment contract" must have the following elements:

    i.) investment of money due to

    ii.) an expectation of profits arising from

    iii.) a common enterprise

    iv.) which depends solely on the efforts of a promoter or third party

7.) The plaintiff also alleges that all four of the defendants have conspired together to violated the Dodd–Frank Wall Street Reform and Consumer Protection Act and Sarbanes-Oxley Amendment of 2002

8.) Needless to say, neither the Emrits' checking accounts or money market account should be considered as negotiable instruments/commercial paper subject to the Holder-in-Due Course Rule. Likewise, the attempted wire transfers by the plaintiff should also be excluded from the

Holder-in-Due-Course Rule because of the fact that wire transfers are not to be misconstrued as negotiable instruments/commercial paper.

## II.) PARTIES TO THIS LITIGATION

9.) The plaintiff is an indigent, disabled, and unemployed citizen/resident of the state of Nevada. His mailing address is 4529 Townwall Street, Las Vegas, NV 89115. His telephone number is (702)816-2863 and his cell phone number is (702)831-7255. The plaintiff's email address is einsteinrockstar2@outlook.com.

10.) The first defendant is "doing business as" (d/b/a) SunTrust Banks, Inc. and its nerve center and/or principal place of business (ppb) is located at the following address: 303 Peachtree St Ne, Atlanta, GA, 30308 United States. Its telephone number is (800) 786-8787

11.) The second defendant is "doing business as" (d/b/a) Western Union. Its nerve center and/or principal place of business (ppb) is located at the following address: 12500 Belford Ave, Englewood, CO 80112. Its telephone number is (720) 332-1000.

12.) The third defendant is "doing business as" (d/b/a) Moneygram International, Inc.. Its nerve center and/or principal place of business (ppb) is located at the following address: 2828 N. Harwood St., 15th Fl.
Dallas, TX, 75201 United States. Its telephone number is (214) 999-7552.

13.) The fourth defendant is a consumer with checking accounts at SunTrust Bank. His name is Ronald Cephas Emrit. His mailing address and physical address is the following: 5108 Cornelias Prospect Drive, Bowie, MD 20720. His telephone number is (301)262-8910. His email address is ronemrit@hotmail.com.

## III.) JURISDICTION AND VENUE

13.) According to Federal Rules of Civil Procedure 8(a)(1), Plaintiff is required to provide "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;"

14.) Because the court does not already have personal or subject matter jurisdiction over this issue, it is necessary to engage in a brief discussion of the court's jurisdiction so that the defendants can not move to dismiss this case based on procedural grounds involving a lack of proper jurisdiction.

15.) Pursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the Northern District of Georgia (as an Article III court) has jurisdiction over this matter because there is complete diversity of jurisdiction between the Plaintiff and the four defendants.

16.) As an Article III court, the U.S. District Court for the Northern District of Georgia also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of the following "black-letter law" provisions of federal law: Dodd–Frank Wall Street Reform and Consumer Protection Act, Sarbanes-Oxley Amendment of 2002, American Recovery and Reinvestment Act (ARRA), Troubled Asset Relief Program (TARP) and the Credit Card Act of 2009.

.17.) Venue in this jurisdiction is also proper pursuant to 28 U.S.C.A. Sections 1391 and 1400.

18.) Because the amount in controversy exceeds $75,000 (i.e. $450,000,000 is greater than $75.000), this court also has jurisdiction with regards to that particular issue.

## IV.) STATEMENT OF FACTS

19.) On September 19, 2005, the plaintiff (Ronald Satish Emrit) asked his mother (Karen Smith Emrit) wire him money through Western Union.

20.) When the plaintiff's mother became confused about how to wire money through Western Union, the plaintiff suggested that he could assist her with regards to setting up a Western Union account online so that she could wire the plaintiff money by entering in her credit card/debit card information.

21.) The plaintiff's mother (Karen Emrit) gave the plaintiff (Ronald Satish Emrit) the debit/credit card number for her Mastercard issued by SunTrust bank.

22.) The plaintiff's mother is a joint account holder of three checking accounts and a money market account with SunTrust Bank.  Karen Emrit is a joint account holder with Ronald Cephas Emrit, i.e. the plaintiff's father.

23.) The plaintiff's mother gave the plaintiff the following credit card/debit card number: 5576 2172 1569 9300.  The expiration date is October, 2016 (e.g. 10/2016) and the card was issued in October, 2014 (e.g. 10/2014).

24.) The security code for the credit card/debit card was 291.  The pin number to use the credit card/debit card was 7884.

25.) None of this information needs to be redacted for privacy issues because of the fact that Ronald Cephas Emrit (i.e., the plaintiff's father) called SunTrust Bank to have a new credit card/debit card issued with a new credit card/debit card number, a new security code, and a new expiration date.

26.) Allegedly, the plaintiff's mother had a checking account ending in "3436" which had approximately $86.00 in the account at the time.  Moreover, the plaintiff's mother had a checking account ending in "7538" which apparently had approximately $8,600 in the account.  Finally, the plaintiff's mother has a checking account ending in "7879" which had approximately $47.38 on September 19, 2015.

27.) After assisting his mother with setting up an online Western Union account, the plaintiff soon discovered that his wire transfer of approximately $190.00 was not able to be completed because of the fact that the debit card/credit card issued to the plaintiff's mother had the primary checking account as the account ending in "3436" which only had about $86.00 at the time of the wire transfer.

28.) After several unsuccessful attempts to assist the plaintiff's mother by trying to wire money through an online Western Union account, the plaintiff then tried to use other wire transfer services such as MoneyGram, PayPal, Google Wallet, and Yahoo Wallet.

29.) Ultimately, Western Union decided not to allow the wire transfers to proceed as opposed to SunTrust Bank blocking the transaction.

30.) Similarly, MoneyGram did not allow the online wire transfers to proceed.

31.) After trying to assist the plaintiff's mother by wiring money through PayPal and Google Wallet, then plaintiff ultimately discovered that SunTrust blocked all of these attempted wire transfer transactions because of the fact that the plaintiff's

father (Ronald Cephas Emrit) called SunTrust Bank and placed a block on his joint account with the plaintiff's mother (Karen Smith Emrit).

32.) The plaintiff called SunTrust customer service at 1(800)786-8787 with his mother on the phone to resolve this matter.

33.) The plaintiff called Western Union customer service at (877)989-3268 with his mother on the phone. The plaintiff and his mother spoke with a customer service agent with the first name "Alex" who had a customer service identification number of "491."

34.) The plaintiff and his mother were informed by "Alex" that Western Union does not allow consumers to call Western Union with "three-way calls" and that the plaintiff's mother had to call Western Union by herself (without the plaintiff on the phone).

35.) The plaintiff explained to "Alex" that he needed to be on the phone with his mother because of the fact that his mother had the early stages of Alzheimer's Disease in which she was experiencing "mild cognitive impairment" (MCI) and/or "benign senescent forgetfulness."

36.) Accordingly, the plaintiff argued that he had to be on the phone with his mother and "Alex" so that he (the plaintiff) could explain to his mother what "Alex" was saying so that the plaintiff's mother would not get confused.

37.) One of the attempted wire transfers (by the plaintiff assisting his mother with the online services offered by Western Union) had a tracking number of "1474700044."

38.) Another attempted wire transfer had a tracking number of "2613457181" while another attempted transaction had a tracking number of "0344724657." Another attempted wire transfer had a tracking number of "8974682518" while yet another had a tracking number of "2864151236."

39.) The attempted wire transfer through MoneyGram International had an authorization number of "23655557."

40.) Needless to say, there were multiple attempted wire transfers due to the fact that the plaintiff and his mother did not understand why Western Union, MoneyGram, and SunTrust Bank would not allow these transactions to go through when the plaintiff's mother clearly authorized the transactions by giving the

6

plaintiff her credit card/debit card number and instructing him to wire the money online by helping her set up an online account with Western Union.

41.) The plaintiff drove to a Walgreen's on Craig Road in North Las Vegas, NV to receive the wire transfer through Western Union.

42.) He then drove to a check-cashing location also on Craig Road and ultimately found out that his wire transfers through Western Union were cancelled first by SunTrust Bank and then by Western Union.

## V.) COUNT ONE: NEGLIGENCE

43.) In order to prove a prima facie case for negligence, the following elements must be proved:

i.) A duty on the part of the defendant to conform to a specific standard of conduct for protection of the plaintiff against an unreasonable risk of injury;

ii.) A breach of that duty by the defendant;

iii.) The breach is the actual and proximate cause of the plaintiff's injury; and

iv.) Damage

44.) The plaintiff argues that all four of the defendants committed negligence by failing to allow the plaintiff to assist his mother with regards to wiring money online through Western Union and Money Gram when she clearly authorized these transactions as a joint account holder of three checking accounts and a money market account with SunTrust Bank.

## VI.) COUNT TWO: CONVERSION

45.) In order to prove a prima facie case for conversion, the following elements must be established:

i.) An act by the defendant that interferes with the plaintiff's right of possession in a chattel;

ii.) The interference is so serious that it warrants requiring the defendant to pay the chattel's full value;

iii.) Intent; and

iv.) Causation

46.) The plaintiff argues that all four of the defendants have committed conversion by failing to allow the transfer of money from the checking account of which the plaintiff's mother is a joint account holder to the plaintiff whereby the plaintiff expected to "pick up" the cash from the wire transfer at a Walgreen's on Craig Road or at a check-cashing location in close proximity to the Walgreen's.

## VII.) COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47.) In order to prove a prima facie case for intentional infliction of emotional distress (IIED), the following elements must be proved:

i.) An act by the defendant amounting to extreme and outrageous conduct;

ii.) Intent or recklessness;

iii.) Causation; and

iv.) Damages- severe emotional distress

48.) The plaintiff argues that all four of the defendants have committed the intentional infliction of emotional distress (IIED) because it was extreme, outrageous, and egregious for all four of the defendants to successfully block a loving mother from wiring money to her son in need all the way across the country (given that the plaintiff lives in Nevada and his mother lives in Maryland).

## VIII.) COUNT FOUR: CIVIL FRAUD/MATERIAL MISREPRESENTATION

49.) In order to prove a prima facie case for civil fraud/material misrepresentation, the following elements must be proved:

i.) Misrepresentation of a material fact (no duty to disclose and opinion not actionable unless rendered by someone with superior skill in the area). Silence is generally not enough; one must make affirmative misrepresentations;

ii.) Scienter, i.e., when the defendant made the statement, he or she knew or believed it was false or that there was no basis for the statement;

8

iii.) Intent to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation;

iv.) Causation (actual reliance);

v.) Justifiable reliance (generally, reliance is justifiable only as to a statement of fact, not opinion); and

vi.) Damages (plaintiff must suffer actual pecuniary loss)

50.) The plaintiff argues that all four of the defendants have committed civil fraud/material misrepresentation by successfully blocking the plaintiff from assisting his mother with regards to setting up an online account with Western Union so that the plaintiff's mother could wire money to the plaintiff using her checking account that formerly had the debit card/credit card number of "5576 2172 1569 9300" with an expiration date of 10/16 and a security code of "291."

## IX.) COUNT FIVE: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS/CONTRACTS

51.) In order to prove a prima facie case for the tortious interference with business relations/contracts, the following elements must be proved:

i.) Existence of a valid contractual relationship between the plaintiff and a third party or valid business expectancy of the plaintiff;

ii.) Defendant's knowledge of the relationship or expectancy;

iii.) Intentional interference by the defendant inducing a breach or termination of the relationship or expectancy; and

iv.) Damages

52.) The plaintiff argues that all four of the defendants have committed the tortious interference with business relations/contracts particularly since the blockage of the wire transfers negatively impacted the plaintiff's ability to conduct business by producing and promoting his music on websites such as fiverr.com.

53.) To elaborate, the plaintiff is the president and CEO of Alex Garcia Enterprises, Inc. (AGE), and he has been trying to get this business licensed in the

state of Nevada in the office of Ms. Barbara Cegavske, i.e. the Secretary of State of Nevada.

## X.) COUNT SIX: PRODUCTS LIABILITY (DESIGN DEFECT/MANUFACTURING DEFECT)

54.)  In order to prove a prima facie case for products liability based on strict tort liability, the following elements must be established:

i.) A strict duty owed by a commercial supplier of a product;

ii.) Breach of that duty

iii.) Actual and proximate cause; and

iv.) Damage

55.) The plaintiff argues that all four of the defendants committed a design defect/manufacturing defect (i.e. strict liability in products liability) by causing a defective wire transfer through the blockage of the online account that the plaintiff helped his mother establish with Western Union and MoneyGram.

## XI.) COUNT SEVEN: MATERIAL BREACH OF CONTRACT

56.) A breach of contract is material if, as a result of the breach, the nonbreaching party does not receive the substantial benefit of his or her bargain.  If the breach is material, the nonbreaching party (i) may treat the contract as at an end (any duty of counter-performance is discharged), and (ii.) has an immediate right to all remedies for breach of the entire contract, including total damages (Note that a minor breach, if coupled with anticipatory repudiation, is treated as a material breach).

57.) In determining whether a breach is material or minor, the courts look at the following factors:

i.) The amount of benefit received by the nonbreaching party;

ii.) The adequacy of compensation for damages to the injured party;

iii.) The extent of part performance by the breaching party;

iv.) Hardship to the breaching party;

v.) Negligent or willful behavior of the breaching party; and

vi.) The likelihood that the breaching party will perform the remainder of the contract.

58.) The plaintiff asserts that all four of the defendants committed a material breach of contract by allowing the plaintiff to help his mother set up an online account with Western Union and MoneyGram although the ultimate effect was that all of the wire transfers initiated by the plaintiff (on behalf of his mother) were blocked by each of the four defendants acting either separately or in conjunction with one another.

## XII.) COUNT EIGHT: VIOLATION OF THE DODD–FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT

59.) The plaintiff argues that all four of the defendants have violated the Dodd-Frank Wall Street Reform and Consumer Protection Act by failing to allow the plaintiff to assist his mother with regards to successfully completing wire transfers online since the plaintiff's mother has mild cognitive impairment (MCI) and/or benign senescent forgetfulness and needed the assistance of the plaintiff to wire money online.

## XIII.) COUNT NINE: VIOLATION OF THE SARBANES-OXLEY AMENDMENT OF 2002

60.) The plaintiff argues that all four of the defendants have violated the Sarbanes-Oxley Amendment of 2002 particularly since none of the corporate executives working for any of the defendants intervened and allowed the plaintiff and his mother to complete the wire transfers initiated online through Western Union, MoneyGram, PayPal, Google Wallet, and Yahoo Wallet.

61.) To elaborate, the plaintiff argues that all of the corporate executives working for any of the defendants had actual, inquiry, and constructive notice due to the fact that the plaintiff emailed several corporate executives (working for the defendants) about this urgent matter.

## XIV.) COUNT TEN: VIOLATION OF THE AMERICAN RECOVERY AND REINVESTMENT ACT (ARRA)

62.) The plaintiff argues that all four of the defendants have violated the American Recovery and Reinvestment Act (ARRA) by failing to allow the plaintiff and his mother to wire money online when the plaintiff's mother clearly authorized the plaintiff to utilize her credit card/debit card number to initiate the online transactions through Western Union, MoneyGram, PayPal, Google Wallet, and Yahoo Wallet.

63.) In particular, the plaintiff argues that all four of the defendants have been in contravention of the Homelessness Prevention and Rapid Re-Housing Program (a provision of the ARRA) since the plaintiff has lived homeless previously and needed his mother to wire money from her bank account to the Walgreen's off of Craig Road in North Las Vegas, NV.

## XV.) COUNT ELEVEN: VIOLATION OF THE TROUBLED ASSET RELIEF PROGRAM (TARP)

64.) The plaintiff argues that all four of the defendants have violated the Troubled Asset Relief Program (TARP) because of the fact that banks have a moral obligation to assist the plaintiff's mother in wiring money to her son after the Treasury Department "bailed out" several large banks on Wall Street (such as Bear Stearns) notwithstanding the fact that Lehman Brothers was permitted to fail by the former Treasury Department Secretary Henry Paulson, former SEC Chairman Christopher Cox, and former Federal Reserve Bank chairman Ben Bernanke.

## XVI.) COUNT TWELVE: VIOLATION OF THE CREDIT CARD ACT OF 2009

65.) The plaintiff argues that all four of the defendants have violated the Credit Card Act of 2009 by penalizing the plaintiff's mother and the plaintiff by blocking their attempts to have the plaintiff's mother wire money to the plaintiff online using Western Union, MoneyGram, PayPal, Google Wallet, and Yahoo Wallet.

## XVI.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff is requesting a remedy at law in the form of a judgment in the amount of $450,000,000 (four hundred and fifty million dollars). This remedy at law would be appropriate considering the fact that all seven of the defendants have committed a material breach of contract in addition to the following torts: conversion, negligence, intentional infliction of emotional distress (IIED), civil fraud/material misrepresentation, the tortious interference with business relations/contracts, and products liability (e.g. design defect or manufacturing defect.). Moreover, all seven of the defendants have committed a violation of the following "black-letter law" provisions of federal law: Dodd-Frank Wall Street Reform and Consumer Protection Act, Sarbanes-Oxley Amendment of 2002, American Recovery and Reinvestment Act of 2009 (ARRA), Troubled Asset Relief Program (TARP), and Credit Card Act of 2009. In asserting this "prayer for relief," the plaintiff states, avers, and alleges the following:

A.) The remedy at law in the form of a judgment in the amount of $450,000,000 would be appropriately considered to be expectation, reliance, restitution, incidental, and consequential damages for the defendants' material breach of contract.

B.) The remedy at law in the form of a judgment in the amount of $450,000,000 would also be appropriately considered to be punitive, compensatory, treble, actual, presumed, and special damages for the defendants' commission of the aforementioned tortious acts in addition to a violation of the following "black-letter law" provisions of federal law: Dodd-Frank Wall Street Reform and Consumer Protection Act, Sarbanes-Oxley Amendment of 2002, American Recovery and Reinvestment Act of 2009 (ARRA), Troubled Asset Relief Program (TARP), and Credit Card Act of 2009.

C.) The plaintiff is also requesting the equitable remedy of an injunction or specific performance mandating that the plaintiff Ronald Emrit be allowed to conduct wire

13

transfers online on behalf of his mother (through Western Union, MoneyGram, PayPal, Google Wallet, and Yahoo Wallet) particularly since his mother suffers from mild cognitive impairment (MCI) and benign senescent forgetfulness.

D.) While punitive damages are not allowed pursuant to the common law of contracts or the Restatement (Second) of Contracts, liquidated damages may be applicable according to Ronald Satish Emrit's initial contract with Western Union and MoneyGram and also according to the terms and conditions of the three checking accounts and one money market account that the plaintiff's mother has with SunTrust Bank..

E.) A discussion of quantum meruit and unjust enrichment may also be applicable. Presumably, Ronald Satish Emrit's contracts with Western Union and MoneyGram are not caveat emptor or "buyer beware" and neither is the contract between Karen Emrit and SunTrust Bank regarding the terms and conditions applicable to her three checking accounts and one money market account.

Respectfully submitted,

Ronald Satish Emrit
4529 Townwall Street
Las Vegas, NV 89115
(702)816-2863
(702)831-7255
einsteinrockstar@hotmail.com
einsteinrockstar2@outlook.com